CENTRAL TRUST COMPANY *v.* CENTRAL TRUST
COMPANY OF ILLINOIS.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
SEVENTH CIRCUIT.

No. 86.   Argued January 18, 1910.—Decided February 21, 1910.

The management of the post office business has been placed by Congress in the hands of the Postmaster General and his assistants, and the Postal Laws and Regulations provide for the delivery of mail where two or more persons of the same name receive mail at the same post office.

While the benefit of one's legal name belongs to every party, individual or corporation, it may at times be necessary, and proper to look beyond the exact legal name to the ñame by which a party is customarily known and addressed in order to properly deliver mail to the person to whom it is addressed.

The findings of fact by officers in charge of the several departments' of the Government are conclusive unless palpable error appears.

In this case the First Assistant Postmaster General having made an order directing delivery of mail addressed to Central Trust Company, Chicago, to the Central Trust Company of Illinois instead of to a South Dakota corporation having the name Central Trust Company, *held* that there was not enough clear right shown by the latter company to justify the setting aside of the order by the court.

152 Fed. Rep. 427, affirmed.

ON June 22, 1906, the Central Trust Company, a corpora-

tion engaged in the mining, promoting, real estate and trust
business, filed its bill in the Circuit Court of the United States
for the Northern District of Illinois to compel the defendant,
Frederick A. Busse, postmaster at Chicago, to deliver to it cer-
tain mail-matter which it claims it was entitled to receive and
which he wrongfully delivered to the defendant the Central
Trust Company of Illinois. Demurrers to the bill were filed,
which were sustained, and the bill dismissed. On appeal to the
United States Circuit Court of Appeals for the Seventh Circuit
the decree of dismissal was affirmed, and thereupon the case
was brought here on appeal.

The allegations in the bill are that on or about April 17,
1897, the complainant was created a corporation by the State
of South Dakota under the name and title of "Central Trust
Company," and was authorized by said State to establish an
office and hold directors' meetings in Chicago; that on or about
that date it established an office in Chicago on the corner of
Monroe and La Salle streets, and began to carry on its business,
though without any express authority from the State of Illi-
nois, and continued to do so up to and including February 7,
1903; that in August, 1902, it applied to the Secretary of State
of Illinois for a license to do business within that State, and
complied with all the statutory requirements for foreign corpo-
rations desiring to do business within the State; that owing to
a contest made before the Secretary of State by the Central
Trust Company of Illinois the granting of said license was de-
layed until February 7, 1903, at which time it was granted, and
that from that date complainant has continuously conducted
its business in Chicago at the office and under the above stated
name; that ever since its coming to Chicago it has received
through the post office a large amount of mail matter ad-
dressed to it by simply its name.

The bill further alleges that the defendant, the "Central
Trust Company of Illinois," is a corporation chartered by the
State of Illinois on or about July, 1902, and engaged in a gen-
eral banking and trust business at No. 142 Monroe street, in

Chicago; that its first place of business was at the corner of Dearborn and Monroe streets, but about the beginning of the year 1906 it removed to No. 142 Monroe street, where it has ever since remained.

The bill still further alleges that from 1897 to 1901 the name of complainant appeared in the Lakeside directory, a directory of general circulation in Chicago and recognized as a reliable and authoritative publication; that while its name was omitted from the directory for 1902, the omission was due to a mere error by the publishers of the directory, and was through no fault of the complainant; that said directory for 1902 was not published and issued until after defendant, the Central Trust Company of Illinois, had filed its articles of incorporation.

It also appears that complaint having been made to the Postmaster General of the action of the postmaster at Chicago in reference to the delivery of the mail received at Chicago, an order was made by the First Assistant Postmaster General in these words:

"January 10, 1903.

"The Postmaster, Chicago, Ill.:

"Sir: I am in receipt of information to the effect that a letter was delivered to Mr. Pfau, a representative of the Central Trust Company of South Dakota, which contained remittances intended to protect checks drawn on the Central Trust Company of Illinois; that Mr. Pfau, instead of returning the letter promptly to the post office for delivery to the Trust Company for which it was intended, returned it to the sender, thereby jeopardizing his credit. Mr. Pfau well knew that the deposit was intended for the Central Trust Company of Illinois.

"You are hereby directed to deliver mail addressed 'Central Trust Co., Chicago, Ill.,' without the addition of the street, box or other designation to indicate that it is intended for the South Dakota Company, to the Central Trust Company of Illinois, and request that company to return to you promptly for delivery to the Central Trust Company of South Dakota all

letters falling into their hands intended for the company represented by Mr. Pfau.

Very respectfully,

(Signed) R. J. WYNNE,
*First Assistant Postmaster General.*"

The prayer of the bill is that the defendant Busse be restrained "from delivering mail addressed 'Central Trust Company' without the street address of this complainant thereon, or some other mark thereon indicating for whom the same is intended, or with the street address 'corner of La Salle and Monroe streets,' to the defendant Central Trust Company of Illinois," and restraining the Central Trust Company of Illinois and its cashier, the defendant William R. Dawes, from receiving and opening said mail so described.

*Mr. W. H. Sears,* with whom *Mr. Daniel McCaskill* and *Mr. O. L. McCaskill* were on the brief, for appellant:

The decision of the Postmaster General giving the mail in controversy to the Central Trust Company of Illinois is reviewable by this court. The act is ministerial in character.

If the act were official, requiring the exercise of judgment and discretion, the decisions would be final and not reviewable by the courts. If, on the other hand, it is ministerial in character, he may be compelled to perform it. *Kendall* v. *United States,* 12 Pet. 524, 614; *New Orleans Bank* v. *Merchant,* 18 Fed. Rep. 841, 850; *Mississippi* v. *Johnson,* 4 Wall. 475, 488; *Teal* v. *Fenton,* 12 How. 284, 291.

This obligation is recognized in the postal regulations, and provision is made for complying with the decrees of court concerning the delivery of mail. Postal Laws and Reg., 1902, § 653, p. 313; and see *Nat'l Life Ins. Co.* v. *Nat'l Life Ins. Co.,* 209 U. S. 317.

In this case not only is all of the mail addressed in the name of appellant, but part of it has the street number of appellant on it. The postmaster has no right to open the mail or au-

thorize others to open it to ascertain its contents. By so doing he subjects himself to a penalty. *In re Jackson,* 96 U. S. 727, 733; *United States* v. *Mathias,* 36 Fed. Rep. 892, 896; *United States* v. *Eddy,* 1 Bissel, 227, 228.

All the postmaster has a right to do under the law in determining for whom mail is intended is to look at the cover of the mail. The postmaster is no more at liberty to act upon mere guesses or surmises than a private agent. The rule that the discretion of an executive officer will not be disturbed presupposes that information upon the matter upon which judgment and discretion are invoked is presented to the officer for consideration, or that knowledge respecting them is possessed by him. *United States* v. *Barlow,* 132 U. S. 280; *School of Magnetic Healing* v. *McAnulty,* 187 U. S. 94, 107, 109.

Where the act of a head of a department is beyond the scope of his authority such act is subject to review by the courts and any person who will sustain injury by such act may enjoin it. *Noble* v. *Union River Logging R. R.,* 147 U. S. 165, 171, 172; *Board of Liquidation* v. *McComb,* 92 U. S. 531, 541; *Public Clearing House* v. *Coyne,* 194 U. S. 497, 509; *Bates & Guild Co.* v. *Payne,* 194 U. S. 106, 108; *Brown* v. *United States,* 9 How. 487; *Payne* v. *Nat'l Ry. Pub. Co.,* 20 App. D. C. 581.

The Post Office Department cannot act arbitrarily and do as it likes with the mail. If it has any right to refuse to accept or to refuse to deliver mail except to the addressee that right must come from some law of Congress. *School of Magnetic Healing* v. *McAnulty,* 187 U. S. 94, 109. The Postmaster General can exclude letters from the mail only where the mail is being used for certain prohibited purposes, as where the mail matter is obscene, 25 Stat. 187, 496, or where the letters concern lotteries, gift enterprises and schemes to defraud and obtain money by false pretenses. Rev. Stat., § 3894. Congress has also authorized the Postmaster General to classify the mail matter, and he may refuse to carry mail except under its proper class. *Houghton* v. *Payne,* 194 U. S. 88. In no other case has any authority been given him to exclude or to refuse

to deliver mail except to the addressee. Under §§ 3890, 3892, Rev. Stat., however, he must deliver the mail to the addressee.

Appellant's failure to file its certificate of incorporation does not affect the issues of this case. The law requiring certificates to be filed was not passed until after appellant had established its office, and subsequently appellant complied with all the requirements of this law. 4 Starr & Curtiss' Ill. Rev. Stat., 310.

The state statute does not say a foreign corporation shall be deprived of all rights to its mail until it files its charter, and if it did it would be assuming powers which belong to the Federal Government alone. A State may forbid a foreign corporation to do business within its boundaries, but it cannot forbid it the right of the mails. As to what is doing business see *Bradbury* v. *Waukegan & Washington M. Co.*, 113 Ill. App. 600, 607; *Boardman* v. *S. S. McClure Co.*, 123 Fed. Rep. 614; *Caldwell* v. *North Carolina*, 181 U. S. 622; Thompson on Corporations, § 7936.

Where a foreign corporation makes a contract within a State before filing its articles of incorporation and subsequently files its articles the contract may be enforced; the remedy is merely suspended until the law has been complied with. 7 Am. & Eng. Enc. of Law, 2d ed., 875–876; *Caesar* v. *Capell*, 83 Fed. Rep. 403, 423; *Wood Mowing Co.* v. *Caldwell*, 54 Indiana, 270, 281; *Carson-Rand Co.* v. *Stern*, 129 Missouri, 381; *Neuchatel Asphalt Co.* v. *Mayor*, 155 N. Y. 373; *Behler* v. *German Mut. Fire Ins. Co.*, 68 Indiana, 347, 355; *Crefeld Mills* v. *Goddard*, 69 Fed. Rep. 141, 142.

These cases take a somewhat different view from *United States Lead Co.* v. *Elevator Mfg. Co.*, 222 Illinois, 199, where such a contract was held void *ab initio*, and see *Ottoman Co.* v. *Dane*, 95 Illinois, 203; *Grand Lodge* v. *Graham*, 96 Iowa, 592.

The courts of Illinois have held in numerous cases that where there is a valid corporation law, and a user by a corporation of the powers intended to be granted by the corporation law, a mere failure to file articles of incorporation with the Secretary of State, or otherwise comply with some of the statu-

tory regulations, cannot be taken advantage of by third parties collaterally. The corporation is held to have a *de facto* existence of which it can be deprived only in a direct proceeding by the State. *Tarbell* v. *Page*, 24 Illinois, 46, 48; *Thompson* v. *Candor*, 60 Illinois, 244, 247, 248; *Cin., LaF. & Chi. R. R. Co.* v. *D. & V. Ry. Co.*, 75 Illinois, 113, 116; *The People ex rel.* v. *Trustees of Schools*, 111 Illinois, 171, 173; *Hudson* v. *Green Hill Seminary*, 113 Illinois, 618, 624.

Numerous States have passed laws making it essential for foreign corporations to file their articles of incorporation to hold real estate within the State. But where the corporations have purchased lands within those States before filing their articles it was held that the State alone could take advantage of their failure. No other corporation could preëmpt the land or confiscate it to its own use on the theory that it was not owned by the foreign corporation. The latter could pass good title to land so taken and held by it, and could maintain an action for trespass upon it. *Seymore* v. *Slide & Spur Gold Mines*, 153 U. S. 523; *Fritts* v. *Palmer*, 132 U. S. 282, 291; *Whitman Mining Co.* v. *Baker*, 3 Nevada, 386; *Carlow* v. *Aultman*, 28 Nebraska, 672, 676; *Sherwood* v. *Alvis*, 83 Alabama, 115.

Where a State requires registration by a foreign corporation doing business within the State, and imposes a penalty for noncompliance with the statute, it shows that, in the mind of the state legislature, the penalty is sufficient to accomplish the desired result, and is exclusive of all other remedies. Cases *supra*, and *Sherwood* v. *Alvis*, 83 Alabama, 115, 119; *State Mut. Ins. Assoc.* v. *Brinkley Co.*, 61 Arkansas, 1, 6; *Kindel* v. *Beck Lithographing Co.*, 19 Colorado, 310, 314; *Union Mut. Ins. Co.* v. *McMillen*, 24 Ohio St. 67, 79; *Garrott Ford Co.* v. *Vermont Mfg. Co.*, 20 R. L. 187, 189; *Toledo Tie Co.* v. *Thomas*, 33 W. Va. 566, 570.

*Mr. Max Pam*, with whom *Mr. Stephen A. Day* was on the brief, for appellee:

First: The name "Central Trust Company" so designates appellee as to justify the postmaster in making delivery to appellee of mail so addressed.

The proposition that a corporation cannot be designated, known by and receive letters, conveyances or grants unless its corporate name is in all respects fully and accurately set forth is untenable. *Chadsey* v. *McCreery*, 27 Illinois, 253; *Board of Education* v. *Greenebaum Sons*, 39 Illinois, 609; *Clement* v. *City of Lathrop*, 18 Fed. Rep. 885; 7 Am. & Eng. Enc. of Law, 2d ed., p. 687; Cl. 10, § 634, Postal Reg. of 1902, applies to corporations as well as individuals.

The rights of the appellee to the use of the name in question were prior to those of the appellant.

Appellant concedes that it did not comply with the statute requiring it to file its certificate, Supp. (1902), Starr & Curtiss, Ann. Stat. Ill., Ch. 32, Par. 52, 53, 54, until after the incorporation of the appellee; as to effect of this, see Hurd's Rev. Stat. Ill., Ch. 32, §§ 28½, 50; *Illinois Watch Case Co.* v. *Pearson*, 140 Illinois, 423, 429.

Appellant does not come into court with clean hands; it has been guilty of such unconscionable conduct in that respect, and so decided by the Post Office Department, as to debar it of any relief in a court of equity.

Appellee is entitled to have mail so addressed delivered to it in the first instance under the laws and regulations of the Post Office Department.

Postal regulations promulgated by the Postmaster General under authority of an act of Congress have the force of law of which the courts must take judicial notice.

The Post Office Department has decided the question in controversy and the court will neither overturn such decision nor interfere with the discretion of the department. *Appleby* v. *Cluss*, 160 Fed. Rep. 984; *Nat'l Life Ins. Co.* v. *Nat'l Life Ins. Co.*, 209 U. S. 541; and see also *United States* v. *Hitchcock*, 190 U. S. 698.

Appellant has misconceived its remedy. It is not entitled to

injunction. In no event could it be entitled to any relief except that of mandámus.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The management of the great post office business of the country is placed in the hands of the Postmaster General and assistants. Rev. Stat., §§ 388, 389, 396. In the discharge of his duties as Postmaster General he has assigned to the First Assistant Postmaster General "the preparation of decisions as to delivery of ordinary mail, the ownership of which is in dispute." Postal Laws and Regulations, 1902, § 17, par. 9. The question here presented is whether the First Assistant Postmaster General, having directed the postmaster at Chicago to deliver to the "Central Trust Company of Illinois," defendant herein, mail-matter addressed "Central Trust Company, Chicago, Ill.," without any further designation of the party for whom it was intended, the courts are, upon the facts as presented, justified in setting aside that order and directing the delivery of such mail to the complainant. It is not always easy to determine for whom a letter is intended. In furtherance of the effort to secure delivery of mail-matter to the proper party, pars. 3 and 4, § 634, and pars. 4 and 5, § 645, of Postal Laws and Regulations provide:

"SEC. 634, Par. 3. When a postmaster is in doubt as to the identity of the addressee, he may require proof, and should exercise great care, especially where mail matter appears to be of value, to make proper delivery.

"Par. 4. Where two or more persons of the same name receive mail at the same office the postmaster should advise them to adopt some address or means by which their mail may be distinguished. Postmasters will deliver such matter according to their best judgment, and will not return it to the mailing office for better description of the addressee until, after inquiry, they are unable to determine to whom it should be delivered."

"SEC. 645, Par. 4. Attempts to secure the mail of an established house, firm, or corporation through the adoption of a similar name should not be recognized. Where disputes arise between individuals, firms, or corporations as to the use of a name or designation, matter addressed to a street, number, or building should be delivered according to such address. When not so addressed, the mail will be delivered to the firm or corporation which first adopted the name of the address at that place.

"Par. 5. When in doubt as to the firm or corporation for which any mail matter is intended, and claim therefor is disputed, postmasters will withhold delivery and report the facts and any statements made by either claimant to the First Assistant Postmaster General, for advice."

Appellant contends that its legal name is "Central Trust Company" while the legal name of defendant is "Central Trust Company of Illinois;" that, therefore, it has a right to have mail directed to "Central Trust Company, Chicago," without further designation, delivered to it rather than to defendant. The argument primarily is that every corporation is entitled to the legal benefit of its own name; that when that name appears on mail-matter as the party addressed, and nothing else is shown, the postmaster has simply the ministerial duty of making a delivery to that corporation, and that a failure to discharge this ministerial duty can be corrected by the courts.

While in a certain sense it is true that the benefit of one's legal name belongs to every party, individual or corporation, yet that may not be the name by which it is customarily known or addressed, and of course the object is and must be to deliver the mail-matter to the party for whom it is intended. In the determination of this it may often be necessary to look beyond the exact legal name. Many things may have to be considered, and the action of an officer charged with that duty should not lightly be disturbed by the courts, and only when it is clear that a mistake has been made or a wrong

done. Initials are often used, abbreviations made, words left out. The number of letters delivered to the respective parties and the disposition made by each of those received may cast some light upon the question, for while a party for whom a single letter is intended has a right to receive it, yet the number of letters, taken in connection with the amount of business apparently done by the recipient, may well suggest for whom any given letter was intended, and the action taken by the recipient, when as here each knows of the existence of the other, may show its good or bad faith in dealing with the post office. So also the character of the business done may be considered. Where a corporation is engaged in the banking business letters from other banks will point to it as the intended recipient, while if it is a real estate corporation letters from real estate firms will indicate differently. And so we might go on and mention other things which, while by no means conclusive, tend to throw light on the matter.

We have had occasion to consider the effect of findings of fact by officers in charge of the several departments of government, and the accepted rule is that those findings are conclusive, unless palpable error appears. *Bates & Guild Co.* v. *Payne*, 194 U. S. 106, and cases cited in the opinion; *United States ex. rel. Parish* v. *MacVeagh, Secretary, &c.*, 214 U. S. 124, 131. In *National Life Insurance Company* v. *National Life Insurance Company*, 209 U. S. 317, it appeared that the Post Office Department had made a special order in reference to the delivery of mail, and the court was asked to correct that order. In denying this application the court, by Mr. Justice Peckham, said (p. 325):

"The appeal made by the complainant to the department was really nothing but an appeal to its discretion. . . . Assuming that the court in some cases has the power to, in effect, review the determination of the department, we do not think this is an occasion for its exercise. The complainant is really appealing from the discretion of the department to the discretion of the court, and the complainant has no clear

legal right to obtain the order sought. See *Bates & Guild Co.*
v. *Payne*, 194 U. S. 106, 108.

"A court in such case ought not to interfere in the admin-
istration of a great department like that of the Post Office by
an injunction, which directs the department how to conduct
the business thereof, where the party asking for the injunction
has no clear right to it."

We do not deem it necessary to consider other questions
discussed by counsel, for, upon the facts presented and for
the reasons stated, we are of opinion that there is not enough
to show such clear right in the complainant as justifies the
setting aside of the order of the First Assistant Postmaster
General.

The decree is, therefore,                *Affirmed.*