## South Covington & Cincinnati Railroad Company v. City of Covington.

(Decided February 6, 1912.)

Appeal from Kenton Circuit Court
(C. L. & E. Division).

1. Municipalities—Second Class—Regulation of Street Railways.—
Under the power conferred on the General Council of a city of the second class by section 3058, Kentucky Statutes, to regulate street railway companies and to pass ordinances expedient in maintaining the peace, health and welfare of the city, the city council may pass an ordinance regulating the number of passengers to be taken on a street car and requiring the company to keep its cars clean and to run a sufficient number of cars to accommodate the traveling public.

2.  Same—Contract Between Company and City.—The contract between the city and the street car company made in 1892 as to the running of street cars does not affect the police power of the city under different conditions adding further regulations, the contract reserving all the rights of the city.

3.  Same—Interstate Commerce—Not Engaged in.—A Kentucky corporation having no franchise or property except in Kentucky and operating no cars beyond the State line is not engaged in interstate commerce.

4.  Same—Ordinance—Requirements as to Capacity of Cars.—An ordinance is not unreasonable, arbitrary or impracticable which requires that the number of persons admitted to the cars shall not be more than one-third above the seating capacity of the car, and that the defendants shall be required to run sufficient cars to reasonably accommodate the public and have its car fumigated and kept clean and at a temperature not lower than 50 degrees Fahrenheit.

5.  Same—When Company Not Liable.—The company is not liable under such an ordinance for not furnishing more accommodations at any time than it has reasonable grounds to anticipate would be required.

ERNEST, CASSATT & COTTLE for appellant.

JNO. E. SHEPARD, STEPHENS L. BLAKELY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

The General Council of the city of Covington passed the following ordinance, which was duly approved by the Mayor on October 24, 1910:

"An ordinance to further regulate the operation of street cars and street car lines in the city of Covington, and providing for the health, comfort and safety of passengers using said cars and providing penalties for the violation thereof.

"Be it ordained by the General Council of the city of Covington:

"Section 1. That it shall be unlawful for any person, corporation or company owning or operating street cars for the carriage of passengers for hire in or through or over the public streets of the city of Covington, to permit more than one-third greater in number of passengers to ride or to be transported within such cars over and above the number for which seats are provided in the same, provided that this section shall not apply to or to be enforced on the days cele-

brated as Fourth of July, Decoration Day or Labor
Day.

"Section 2. No such person, company or corpora-
tion shall suffer or permit any passenger or person to
ride upon the rear platform of any such car unless the
same be provided with a suitable rail or barrier so ar-
ranged as to provide an open space reasonably sufficient
for egress and ingress of passengers to and from such
car, and no one shall be permitted to stand in such place
so provided for such ingress and egress but the same
shall at all times be kept clear, free and open. Any
person refusing to vacate such open space provided for
egress and ingress upon request of the conductor in
charge of said car shall be guilty of a misdemeanor and
be subject to a fine of not less than five dollars nor more
than fifty dollars, recoverable in the police court of said
city.

"Section 3. No such person, company or corpora-
tion shall suffer or permit any person or passenger to
ride upon the front platform of any such car unless
a rail or barrier be provided, separating the motorman
from the balance of said front platform, said space al-
lowed for the motorman shall in all cases be sufficient
to permit him to properly and conveniently operate the
mechanism controlling said car without interfering or
crowding from the other person upon said platform, if
any, and no person or passengers shall ever be per-
mitted to stand by or remain within the enclosure thus
provided for the motorman.

"Section 4. It shall be the duty of every such per-
son, company or corporation to at all times keep its
cars thoroughly cleaned and ventilated, and shall at
least once a week fumigate the inside of said cars with
efficient disinfectant, and the Board of Health of the
city of Covington shall have power and authority to
prescribe reasonable rules providing for the cleanliness,
ventilation and fumigation of such cars, and all such
persons, companies or corporations shall comply with
such reasonable rules.

"Section 5. The temperature of such cars shall
never be permitted to be below 50 degrees Fahrenheit.

"Section 6. It is hereby made the duty of every
company, person or corporation, operating street cars
and the street car lines within the corporate limits of
the city of Covington, to run and operate cars in suf-
ficient numbers at all times to reasonably accommodate

the public within the limits of this ordinance as to the number of passengers permitted to be carried, and the General Council of the city of Covington, may by resolution at any time direct that the number of cars operated upon any line or route be increased to a sufficient number to so accommodate the public, if there is a failure·in that respect. Any such person, company or corporation failing or refusing to run or operate sufficient cars as by this section provided shall be subject to the penalties provided by Section 2 hereof.

"Section 7. Any person, company or corporation, violating either of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and shall be punished by a fine of not less than fifty nor more than one hundred dollars for each offense, recoverable in the Police Court of the City of Covington, and each car operated in violation of this ordinance shall constitute a separate offense for each day it is so operated, and it is hereby made the duty of all police officers of such city and other exercising police power, to see to the enforcement of this ordinance, and to arrest or to cause the arrest of all persons guilty of its infraction. And the chief of police is hereby directed to assign at least one police officer to the special enforcement of this ordinance. It shall be the duty of such officer to examine and observe street cars in operation and to make arrests and cause proper prosecutions to be started against offenders violating this ordinance.

"Section 8. Nothing contained in this ordinance shall be held or construed to be or to effect a renewal or an extension or enlargement of the right of any person, company or corporation to use or occupy the streets and highways of the city of Covington for street railway purposes.

"Section 9. This ordinance shall take effect thirty days from and after its passage and approval by the Mayor."

On November 22, 1910, the South Covington and Cincinnati Street Railway Company brought this suit against the city and its authorities to enjoin the enforcement of the ordinance on several grounds. The circuit court on final hearing dismissed the action. The railway company appeals.

1. It is insisted that the city is without power to pass the ordinance. The statute regulating cities of the sec-

ond class, including Covington, contains among other things, this provision:

"The General Council shall have power by ordinance * * * to license, tax and regulate * * * street railway companies or corporations." (Sec. 3058, Kentucky Statutes, Subsec. 2.)

"To pass all such ordinances, not inconsistent with the provisions of this act or the laws of the State, as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade commerce and manufactures, and to enforce the same by fines and penalties; and any enumeration of subjects and matters herein to be regulated shall not be construed as a limitation upon this general power." (Sec. 3058, Kentucky Statutes, Subsec. 25.)

We have in the Kentucky Statutes a number of provisions regulating railways providing as to the maintenance of waiting rooms, the keeping open of ticket offices, the posting of tariffs and a number of other regulations of a similar character. That the Legislature in the exercise of its police power may enact such regulations is not now seriously disputed, and we think it evident that the General Assembly has conferred upon the municipality similar power as to street railways within the city. These are matters concerning primarily the citizens of the city, and may be better regulated by the local authorities who are cognizant of the local situation than by general laws passed by the General Assembly. The overcrowding of street cars with the troubles which naturally ensue, the providing for clean, sanitary and comfortable cars and the requiring of a reasonably efficient service are matters that the city may properly regulate under the police power.

2. It is insisted that the subject is covered by contract and may not be controlled by the municipality. In October, 1892, an ordinance was passed by the city of Covington which provided a number of things that the Street Car Company were to do. Among other things it was provided by ordinance that the Street Car Company should charge a five cent fare, and that it should run its cars during certain hours at intervals not to exceed seven minutes. This ordinance was accepted and agreed to by the Railway Company, but it is manifest from the ordinance as a whole that it was not contemplated by either of the parties that it should tie the hands of the city for all time or prevent it from requir-

ing what was reasonable and necessary when conditions changed. The city of Covington has doubled in size since that ordinance was passed, conditions are entirely different, and it is perfectly evident from the ordinance that the council was only dealing with the situation then before it. It did not attempt to contract away the power of the council to deal with other and different conditions as charges might come in the future.

Among other things the ordinance contains this express language:

"It is further distinctly understood and agreed by said city and said company that nothing in this ordinance contained shall be held or construed to be any surrender or waiver of the rights of either said city or said company."

The city could not contract away its governmental power, and it manifestly did not attempt to do so. (Lexigton Turnpike Co. v. Crozton, 98 Ky., 739; Commonwealth v. Covington & Cinn. Bridge Co., 14 R., 836; Georgia R. R. Co. v. Smith, 128 U. S., 174; Chicago, &c., R. R. Co. v. Ill., 200 U. S., 561.)

3. It is insisted that the ordinance interferes with interstate commerce. The railway company is a Kentucky corporation; it has no franchise or property except in Kentucky. While its cars run into Cincinnati, when they pass the State line, they are operated by an Ohio corporation. The Kentucky corporation is not engaged in interstate commerce; it simply carries the passengers to the State Line. The Ohio corporation there receives them and carries them on to their destination in Cincinnati. We are utterly unable to see that there is any question of interstate commerce in the case. The ordinance is only in force in the city of Covington, and certainly the State of Kentucky may regulate a common carrier doing no business except in the State of Kentucky, and having no property except here. (Missouri Pac. R. R. Co. v. Kansas, 216 U. S., 261.)

4. Lastly, it is insisted that the ordinance is unreasonable, arbitrary and impracticable. Covington and Newport are on the South side of the Ohio river opposite Cincinnati. Newport is separated from Covington by the Licking river. The two cities have a population of something over 75,000. The Newport cars pass through Covington in going to and from Cincinnati. In addition to this there are Latonia, Ludlow, South Covington and several smaller places near by the cars

from which pass through Covington. A large part of the male population in these cities work in Cincinnati. The result is that in the morning hours when the workers are going out to work, and in the evening hours when they are returning from work, there is great congestion on the cars by reason of which the passengers are subjected to dangers and are sometimes delayed in getting to and from their work, and are made more or less uncomfortable during the journey. Especially is this true of ladies on the very crowded cars. The ordinance was enacted to remedy this situation. It is insisted that the cars are capable of carrying without danger to person or health a greater number of passengers than permitted by the ordinance; that some cars have a greater capacity than others in the matter of standing passengers on the rear platform; that the ordinance limits the number of passengers permitted to stand within the cars but places no limit on the number which may be permitted to stand on the back platform, and that the company will be without power to prevent these passengers from going into the car at pleasure, as the conductor will be engaged in taking up his fares; that the ordinance provides for no fine against the passengers violating its provisions; that the company can not prevent people from getting on the cars in greater numbers than the ordinance permits; that the requirement of fumigation of each car once a week is unnecessary and unreasonable and that owing to the facilities which the company has in Cincinnati, it will be impracticable for it to run cars at less intervals than it now runs them.

We are unable to see that the ordinance is invalid for any of these reasons. It is a reasonable requirement that the number of passengers which shall be permitted to ride within the car shall not be more than one-third greater than the seating capacity of the car. When a greater number of people are permitted to be in a car, there is certainly more or less tendency to create disorders and to bring about conditions not favorable to the health or comfort of the passengers. If the conductor is engaged in taking up his fares, some arrangement can be made to keep passengers out of the car, or an extra man may be employed for this purpose. The company has charge of its car, and it can refuse to take on other passengers, and if a passenger is allowed to get on the rear platform when there is no room in the car, he may be prevented from entering the

car. If the company can not provide the necessary accommodations for the traveling public on the cars it has, it must provide itself with more cars. It is a public servant created for a public purpose, and while it enjoys its franchise, it must discharge the duties imposed upon it by the franchise. If it can not run its cars singly, and carry the crowd, it must run trailers or it must use larger cars. The cars it uses were adequate when the population of these cities was half what it is now, but if larger cars are required by the increased population, then larger cars must be provided or the smaller cars must be run as trailers.

We do not see that sections 4 or 5 are arbitrary or unreasonable. As shown by modern science a large percentage of disease is communicated by germs, and when many people are carried in cars these germs are liable to find lodgment there. We can not say that the fumigation of a car once a week is an unreasonable requirement or that it is unreasonable to require the cars to be kept at a temperature of not less than 50 per cent. Fahrenheit.

The rule at common law is that a carrier must provide reasonable accommodations for such a number of passengers as in the exercise of ordinary care he has reason to anticipate will demand to be carried. This rule of the common law is to be read into section 6 of the ordinance. It is the duty of the defendant under the ordinance to run and operate cars in sufficient numbers at all times to reasonably accommodate the public as there provided, in so far as in the exercise of ordinary care it has reason to anticipate that such an amount of accommodation will be necessary. When section 6 is thus read it is not unreasonable or arbitrary or impracticable of enforcement. The company will not be responsible for not furnishing a sufficient accommodation to accommodate a crowd which it has not reason in the exercise of ordinary care to anticipate. But it should exercise ordinary care to provide cars that will reasonably accommodate the passengers which may reasonably be anticipated.

Judgment affirmed.