## Commonwealth v. South Covington & Cincinnati Street Railway Company.

(Decided October 1, 1918.)

### Appeal from Kenton Circuit Court (Criminal, Common Law and Equity Division).

1. Nuisance—Defined.—A common law public nuisance is the doing or the failure to do something that injuriously affects the safety, health or morals of the public, or works some substantial annoyance, inconvenience or injury to the public, and it will be sufficient if it affects such members of the public as are brought in contact with the conditions that constitute the nuisance.

2. Nuisance—Defined.—A nuisance must be the natural, direct and proximate cause of the defendant's acts; if injurious results flow from acts done by other persons on the defendant's property, he is not liable.

3. Nuisance—Overcrowded Street Car—Company Permitting, Not Guilty of Common Law Nuisance.—A street car company doing business wholly in this state, in the absence of an ordinance or statute, cannot be prosecuted for a common law nuisance on

the ground that it fails to furnish a sufficient number of cars to enable persons to ride without being overcrowded, or for permitting such cars to become overcrowded.

4.   Nuisance—Street Car May Become.—If a railway company permits its cars to be used for indecent or pernicious purposes or to become filthy or unsanitary, or drunken or disorderly persons are habitually permitted to frequent them it will be guilty of a common law nuisance.

5.   Street Railroads—Regulations to Prevent Overcrowding of Cars. —A street railway company may, in the absence of an ordinance or statute, prescribe reasonable regulations as to the number of passengers that may ride at one time on any of its cars.

5.   Street Railroads—Regulations to Prevent Overcrowding of Cars and Number of Cars to be Run.—The overcrowding of cars as well as the number of cars that shall be run to accommodate the public may be regulated by the state or the city, pursuant to statutory authority.

7.   Street Railroads—Cannot be Compelled by Criminal Prosecution to Furnish More Cars.—A street railway company cannot be compelled by an indictment for nuisance to furnish more cars for the accommodation of the public, because there would be no standard except jury verdicts by which the company might regulate its business.

CHARLES H. MORRIS, Attorney General, and STEPHENS L. BLAKELEY, Commonwealth's Attorney, for appellant.

J. C. W. BECKHAM and ERNST, CASSATT & COTTLE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The South Covington & Cincinnati Street Railway Company, a Kentucky corporation, owning and operating a line of street railway in the city of Covington, Kenton county, Kentucky, was indicted by the grand jury of Kenton county, the charge in the indictment being that the company "did on said day and ever since, up to and immediately preceding the finding of this indictment, unlawfully, continuously, unreasonably, and for a long and unnecessary period of time, invite, suffer and permit a large and unreasonable number of men and women to congregate, assemble and gather upon its street cars operating upon what is known as the Rosedale line, and unlawfully, unreasonably, wilfully, continuously and knowingly failed and refused to furnish cars sufficient in number and size to accommodate the general public and citizens of the Commonwealth then and therein being upon its cars, and

did unlawfully, knowingly, continuously and unreasonably allow, suffer and permit its said street cars on said line of railway on said day, and on each day since, and up to and immediately preceding the day of the finding of this indictment to become unreasonably and dangerously overcrowded with men, women and children, permitting and causing the same to block and crowd the aisles, and stand upon the front and rear platforms, on said cars, rendering the cars in which said persons were permitted to be, crowded, gathered and congregated, unsanitary, unhealthy and uncomfortable to persons gathered therein and riding thereon, and greatly and unnecessarily and unreasonably endangering the safety, health and comfort of said passengers, said condition being unsafe, unsanitary and dangerous and in violation of its legal duty as a common carrier, and to the common annoyance and nuisance of all citizens of the Commonwealth then and there being riding upon said cars, and having the right then and there to be and travel, against the peace and dignity of the Commonwealth.''

To this indictment the trial court sustained a general demurrer and on this appeal by the Commonwealth the only question before us is, did the indictment charge a public offense? There is no statute regulating the subject matter of the indictment, which was found under the common law principles relating to the prosecution of persons guilty of committing a punishable nuisance. It may, however, be said at this point that the city of Covington did, by ordinance with appropriate penalties, undertake to regulate the conduct of this company in the operation of its cars and the number of passengers that it should carry in each car, and the validity of this ordinance was before this court in the case of the South Covington & Cincinnati Street Railway Company v. City of Covington, 146 Ky. 592. In that case the railway company brought suit against the city to enjoin the enforcement of the ordinance, section 1 of which provides ''That it shall be unlawful for any person, corporation or company owning or operating street cars for the carriage of passengers for hire in or through or over the public streets of the city of Covington, to permit more than one-third greater in number of passengers to ride or to be transported within such cars over and above the number for which seats are provided in the same, provided that this section shall not apply to

or be enforced on the days celebrated as the Fourth of July, Decoration Day or Labor Day.'' And section 6 that ''It is hereby made the duty of every company, person or corporation, operating street cars and the street car lines within the corporate limits of the city of Covington to run and operate cars in sufficient numbers at all times to reasonably accommodate the public within the limits of this ordinance as to the number of passengers permitted to be carried, and the general council of the city of Covington may, by resolution, at any time, direct that the number of cars operated upon any line or route be increased to a sufficient number to so accommodate the public, if there is a failure in that respect. Any such person, company or corporation failing or refusing to run or operate sufficient cars as by this section provided shall be subject to the penalties provided by section 2 hereof.'' Other sections of the ordinance, the enforcement of which was sought to be enjoined, undertook to regulate in other respects, not pertinent here, the operation and equipment of the cars.

This court, in its opinion, upheld the validity of the ordinance and further held that the company was not engaged in interstate commerce.

From the opinion of this court the railway company prosecuted an appeal to the Supreme Court of the United States, and that court, in an opinion reported in 235 U. S. 537, 59 Law Ed. 350, reversed so much of the opinion of this court as ruled that it was permissible for the city, by ordinance, to regulate the number of passengers that might be carried in each car, or the number of cars that should be run, and further held that the railway company was engaged in interstate commerce.

The decision of the Supreme Court may not be very pertinent to the case we have, as the indictment does not disclose the fact that this railway company at the time, and before the indictment was found, was engaged in interstate commerce, although we may reasonably assume that it was engaged in such commerce and under the same conditions existing when the injunction suit was filed.

We may further take it for granted that these opinions were not referred to or mentioned in the brief of counsel because the indictment shows on its face that

the railway company was engaged only in intrastate business.

So that looking to the indictment as it stands the precise question for our consideration is: Can a street car company doing business wholly in this state, in the absence of an ordinance or statute on the subject, be prosecuted under an indictment for nuisance for failing to furnish a sufficient number of cars to enable persons desiring passage to ride without being overcrowded or for permitting such a number of passengers to board any car as may create a crowded condition detrimental to the safety, health and comfort of the passengers?

The argument in behalf of the Commonwealth is that a street car is a public place to which the public are invited and permitted to go, and therefore when the owner of the public place voluntarily permits it to become so overcrowded as to endanger the safety, health and comfort of the public that it has invited and permitted to ride on its cars, it is guilty of an indictable common law nuisance, as we have no statute defining what constitutes a nuisance.

What is a nuisance has been defined many times and the definitions differ in some minor respects, but upon the whole a common or public nuisance is the doing of or the failure to do something that injuriously affects the safety, health or morals of the public or works some substantial annoyance, inconvenience or injury to the public, although it is not of course essential that the injury, annoyance or inconvenience should affect the whole body of the public. It will be sufficient if it operates upon such members of the public as are brought into contact with the conditions that constitute the nuisance. Joyce on the Law of Nuisance, sec. 5.

But this general definition is hardly applicable to the case we have, and to make it so the law of nuisance would have to be enlarged to meet conditions to which so far as our investigation goes it has never been extended. We agree with counsel for the Commonwealth that a street car is a public place in which the public are invited and permitted to come and remain, and we have no doubt that if a railway company permitted its cars to be used for indecent or pernicious purposes injurious to the morals of the public desiring to or becoming passengers on its cars, or permitted its cars to become so filthy or unsanitary as to endanger the health of passen-

gers, or allowed drunken or disorderly persons to habitually frequent its cars to the annoyance and discomfort or inconvenience of the traveling public, as, for example, if it permitted gambling devices to be set up in its cars, or disorderly persons or lewd women to congregate therein, or allowed them to become so unsafe as to continually endanger the safety of passengers, that it would be guilty of a common law nuisance, because passenger cars used by common carriers in the performance of their public duty are places set apart for public use where the public are invited and expected to go, although they may be owned by and under the control of a private corporation. Coleman v. State, 13 Ala. 602; City of Burlington v. Stockwell, 5 Kas. 569; Com. v. Cincinnati R. Co., 33 Law Rep. 1056, 18 L. R. A. (N. S.) 699.

But there is no charge in the indictment that this public place was itself unhealthy or unsafe or unsanitary, or on account of anything the company directly did injurious to good morals or detrimental to the comfort or convenience of the public, or that the railway company contributed in any manner or way to the unsafe, unhealthy and discomforting conditions charged in the indictment except by permitting members of the public who desired passage on the cars to board already overcrowded cars. It would thus appear that the injurious consequences growing out of the described conditions were brought about by the members of the public themselves who sought passage on the cars and there crowded them by their voluntary action to such an extent as to cause to exist the conditions alleged to be offensive.

Generally speaking, the law of nuisance is invoked to protect the public affected from conditions they had no part in creating and from the consequences of injury to health, safety or morals that were produced without their consent or acquiescence by some other person or by the owner of the premises or property sought to be declared a nuisance; but here we have a public place free from any offensive elements, and that is not, and could not be under the charge in the indictment injurious to either the health, comfort or safety of any person unless made so by the voluntary congregation of persons who are themselves the only members of the public that could reasonably be injured by conditions which they themselves created.

It may be admitted that the street car company, by inviting and permitting the public to overcrowd its cars, participated in the creation of the conditions that constitute the nuisance complained of, but this circumstance does not impair the force of the argument that the only members of the public affected by the conditions were those who themselves brought them about, and we think that when members of the public voluntarily, although by invitation and permission, create conditions on the premises of another injurious only to their safety or health, or from which they alone suffer annoyance, inconvenience or discomfort, it cannot be said that the owner of the premises is guilty of committing a public nuisance.

Thus it is said in Joyce on Nuisance, section 476: "The injurious consequences or nuisance complained of should be the natural, direct and proximate cause of defendant's acts to render him liable for maintaining a public nuisance, for it is a good defense that the tortious act was committed by other, or third parties; and if the injurious results flow from acts done by others operating on the alleged nuisancer's acts so as to produce such results, then he is not liable."

We also think that a street car company may, and in the absence of any ordinance or statute, prescribe reasonable regulations as to the number of passengers that should ride at one time on any of its cars and further adopt and enforce rules providing that when its cars contain the prescribed reasonable number others desiring passage may be refused admittance. 10 Corpus Juris, p. 650. But if it does permit its cars to become overcrowded and thereby the passengers in these overcrowded cars are injuriously affected, the railway company cannot, as we think, be made answerable in a criminal prosecution for producing a nuisance. The remedy of those who may be injured by the overcrowding is to be found in an action for damages against the carrier. South Cov. & Cin. Street Ry. Co. v. Harris, 152 Ky. 750; Basey v. Louisiana R. & N. Co., 137 La. 451, 1915 L. R. A., E. 964; Shields v. Minneapolis Traction Co., 124 Minn. 327, 50 L. R. A. (N. S.) 49; LaBarge v. Union Electric Co. 138 Iowa 691, 19 L. R. A. (N. S.) 213.

Nor have we any doubt that a city, pursuant to statutory authority, or the state, has authority to enact laws reasonably regulating this subject, applicable to com-

panies engaged in doing business wholly within the
state, or that Congress has the right to make similar reg-
ulations affecting carriers doing an interstate business;
because the reasonable control and regulation of the
manner in which common carriers may conduct their
business for the convenience and safety of the public is,
we think, plainly within the power of the jurisdiction
having authority to adopt and enforce such regulations.
Nellis on Street Railways, vol. 1, sec. 143; City of Chi-
cago v. Chicago City Ry. Co., 222 Ill. 560; Mayor v.
Dry Dock R. R. Co. 133 N. Y. 104.

Counsel for the Commonwealth in a well prepared
brief have not referred us to any authority supporting
the proposition that a street car company may be found
guilty of a common nuisance by committing the acts
charged in the indictment, nor have we, after a somewhat
extended investigation, found any authority that would
support the charge, although, of course, the mere ab-
sence of authority on the subject is not of itself conclu-
sive of the question that the indictment is not good.

But as a case of first impression we are of the opin-
ion that an indictment for nuisance is not the proper rem-
edy in cases like this unless the arm of the criminal law is
invoked to enforce the provisions of some reasonable
ordinance or statute regulating the number of passengers
that may ride in the car, or the number of cars that shall
be run for the reasonable accommodation of the public.

We also think it may fairly be said that this indict-
ment is an attempt by criminal prosecution to compel the
railway company to run on the line in question a greater
number of cars than it now runs and to furnish such
a number as may be reasonably necessary to accommo-
date the public, because it is obvious that the alleged over-
crowding of the cars is due to the failure to furnish a
sufficient number of cars, and this being so it is equally
obvious that whether it furnished a sufficient number of
cars would be left to the determination of every  jury
trying the case if criminal prosecution without stat-
utory regulation was the proper remedy to compel the
company to furnish the requisite number of cars.  The
matter of guilt or innocence being thus left to depend on
the view that different juries might take of the matter
there would be no reasonable standard by which the
company could determine in advance whether it was
violating or observing the law.  That civil relief of the

character here sought to be secured cannot be obtained by criminal prosecution has, we think, been definitely determined by this court as well as others. In Louisville & Nashville Railroad Company v Commonwealth, 99 Ky. 132, the railroad company was indicted for a violation of section 816 of the Kentucky Statutes, reading: "If any railroad corporation shall charge, collect or receive more than a just and reasonable rate of toll or compensation for the transportation of passengers or freight in this state, or the use of any railroad car upon its track, or upon any track it has control of or has the right to use in this state, it shall be guilty of extortion."

In holding that the statute was too uncertain and indefinite to furnish the basis of a criminal prosecution the court said: "Under this statute it is still a crime, though it can not be known to be such until after an investigation by a jury, and then only in that particular case, as another jury may take a different view, and, holding the rate reasonable, find the same act not to constitute an offense. There is no standard whatever fixed by the statute, or attempted to be fixed, by which the carrier may regulate its conduct; and it seems clear to us to be utterly repugnant to our system of laws to punish a person for an act, the criminality of which depends, not on any standard erected by the law which may be known in advance, but on one erected by a jury. And especially so as that standard must be as variable and uncertain as the views of different juries may suggest, and as to which nothing can be known until after the commission of the crime." In Tozer v. United States, 52 Fed. Rep., 917, it was also said: "But in order to constitute a crime the act must be one which the party is able to know in advance whether it is criminal or not. The criminality of an act can not depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty." Other illustrative cases on the subject are: Waters-Pierce Oil Co. v. State of Texas, 212 U. S. 86, 53 Law Ed. 417; Nash v. United States, 229 U. S. 373, 57 Law Ed. 1232; International Harvester Company of America v. Commonwealth, 234 U. S. 579, 58 Law Ed. 1479.

Upon the whole case we agree with the lower court that the indictment did not charge a public offense, and therefore the judgment is affirmed.