15137

WOODWORTH, MAYOR, *ET AL.* v GALLMAN *ET AL.,*
GALLMAN v. WOODWORTH, MAYOR, *ET AL.*

(10 S. E. (2d), 316)

July, 1940.

*Messrs. Evans, Galbraith & Holcombe,* for petitioners,

*Mr. E. W. Johnson,* for respondent,

August 3, 1940.

*Per curiam.*

The Housing Authority of the City of Spartanburg was originally organized on or about April 20, 1938, pursuant to the Housing Authorities Law to engage in low-rent housing and slum clearance projects. Acts of 1934, Act March 19, 1934, 38 St. at Large, 1368, as amended by 1935 Acts, Acts May 17 and June 5, 39 St. at Large, 424, 500; 1937 Acts, Acts April 17 and May 10, 40 St. at Large, 267, 431,

1426; Acts of 1938, Acts May 6 and April 15, 40 St. at Large, 1819, 1909.

The authority has been and is now arranging for the construction in the City of Spartanburg of low-rent housing accommodations for both white and Negro families of low income. As provided by the terms of the Act, five commissioners were appointed to constitute the authority. Later they resigned, and on October 2, 1938, their successors were duly appointed, and they, together with the mayor of the City of Spartanburg, are the petitioners in this proceeding.

On July 1, 1940, O. T. Gallman, suing on behalf of himself and all other taxpayers of the city, brought suit to enjoin the further functioning of the Authority, and served, along with the complaint, a rule signed by his Honor, Judge Oxner, returnable before him on July 5, 1940, directing the defendants (petitioners here) to show cause why a temporary injunction should not be issued. On July 3, 1940, upon the verified petition of the defendants in the injunction suit, supported by exhibits and affidavits, the Chief Justice issued a rule returnable before the Supreme Court, requiring the Court of Common Pleas and the plaintiff in the injunction suit to show cause why the Supreme Court should not issue a writ of prohibition, assume original jurisdiction of the injunction suit, and proceed to a final determination of it. The issues thereafter came on to be heard before the Court on July 16, 1940, in special session, upon the verified petition, demurrer, answer, and the return of the petitioners, with exhibits and affidavits, and a demurrer and affidavits on the part of the respondents, together with the return from the Court of Common Pleas.

The respondent, Gallman, contends that the Court of Common Pleas for the County of Spartanburg should be allowed to retain jurisdiction and proceed with the cause, and that the writ of prohibition should be denied.

It appears that the Housing Authority of Spartanburg has for several months been actively and openly engaged in

its work, having applied for and obtained from the United States Housing Authority a commitment for both a Negro and a white housing development. It has selected a site for each development, employed executive and clerical assistants, surveyors, architects, real estate negotiators, and attorneys. That either by purchase or condemnation, it has acquired title to and has paid for thirty of the thirty-two tracts of land needed for the two developments, and has accepted options on the other two. It has made contracts with the City of Spartanburg and with the United States Housing Authority. It has issued and sold one note for $68,500.00 to raise funds for the six months' period ending June 30, 1940. On July 2, 1940, the Authority received bids pursuant to widely published advertisements for the construction of the development on the site for the Negroes; and, pursuant to widely published advertisements, received bids on July 10, 1940, for the purchase of $400,000.00 in six months' notes to finance operations to December 31, 1940, the notes to be delivered July 25, 1940. A resolution adopted by the city council shows that prior to the organization of the Housing Authority, an acute shortage of houses for white families and Negro families existed in the city, and that there are many sub-standard houses, and a general shortage of safe and sanitary dwelling accommodations available to families of low income at rentals they could afford to pay. The urgent need for more housing accommodations in Spartanburg is made clear by a survey made by Dr. C. C. Norton, professor of social science at Wofford College, and by affidavits appearing in the record.

It is contended by the petitioners that the injunction suit of Mr. Gallman could not have been better timed to paralyze the activities of the Authority in carrying out the housing program. It is pointed out that the suit was instituted only after the Authority had become fully organized, had been in active operation for months, and after contracts had been entered into with the City of Spartanburg and the United

States Housing Authority; after it had acquired thirty parcels of real estate, and after it had borrowed and spent $68,-500.00. The six months' period for which operating funds had been supplied expired the day before the injunction suit was brought, and further operating funds were not to be arranged for until July 10th. These financial arrangements, of course, cannot be completed as long as litigation is pending. It is shown that bids for the construction of the Negro development, pursuant to advertisements that had been running for about a month, were to be received the day after the injunction suit was brought. And it further appears that all bidders on the project are released unless their bids are accepted within sixty days. The Authority in the face of the injunction suit can make no commitments of any kind before the proceeding is finally determined.

The petitioners assert that they are entitled to a speedy determination of the controversy, and urge this Court to assume jurisdiction to prevent the grave injustice and the irreparable injury which the Authority will suffer if this Court should refuse the writ of prohibition prayed for. It is urged that the time which would normally be consumed in the trial of the case in the Court of Common Pleas would result in a complete disruption of the organization of the Authority. It is said that a delay of months would work irreparable injury to the Authority, would defeat the purpose for which it was organized, and would amount practically to a death sentence.

In *State ex rel. Zimmerman v. Gibbes,* 1933, 171 S. C., 209, 172 S. E., 130, 132, affirmed 290 U. S., 326, 54 S. C., 140; 78 L. Ed., 342, a suit had been brought in the Court of Common Pleas to have a Receiver appointed for a bank for which the Board of Bank Control had appointed a conservator. There the question was whether the remedy by appeal from the Common Pleas Court was such a completely adequate remedy as would justify the Court in refusing the writ of prohibition on that ground. In grant-

ing the writ "in the existing circumstances requiring a speedy disposition of the questions presented," the Court said:

"The rule is that, where the court in which the original action is brought has jurisdiction and the usual remedies provided by law are adequate and complete, the writ should not issue. The respondent, Gibbes, contends that this proceeding falls within that class; the petitioners, defendants in common pleas, having a full and adequate remedy by appeal. The question, however, whether the remedy is inadequate, is one within the sound discretion of the court to which application is made for the issuance of the writ, and is to be determined on the facts of each particular case. And in this connection the court may properly consider the delay and inconvenience incident to appeal, although the inadequacy of such remedy will not be tested solely by these considerations. It is to be kept in mind that the right of prohibition is defeated, not by the exercise, but by the adequacy, of the remedy by appeal.  *  *  *

"In the case at bar we conclude, upon consideration of the facts before us, that the remedy accorded the petitioners by appeal is not, in the existing circumstances requiring a speedy disposition of the questions presented—to which we shall more particularly hereafter refer—such a completely adequate remedy as would justify the court in refusing the writ on that ground."

And see 50 C. J., § 98, 697.

After a careful examination of the record, it appearing that time is of the essence, we are of the opinion, in view of the inadequacy of the remedy by appeal, and in view of the importance of the case, that we should grant a writ of prohibition and assume original jurisdiction, to the end that there may be a speedy determination of the case. We think the issues presented by the complaint in the injunction suit and the demurrer filed thereto by the defend-

ants in that action, who are the petitioners here, may be disposed of now by this Court.

Three causes of action are purported to be alleged in the complaint. We will take them up in order.

As to the first cause of action:

The complaint attacks the regularity of the organization of the Authority by asserting that the Spartanburg city council prior to the adoption of the resolution providing for the creation of the Housing Authority in the State, failed to make an investigation to establish "the number of unsafe and insanitary dwellings in the city," or to ascertain "the shortage of safe and sanitary dwellings."

It should be borne in mind that the Authority is created and established by the statute itself, and not by action of the city council. And a resolution of the city council declaring the need for a Housing Authority is prerequisite only to the functioning of the Authority in the city (Acts 1934, 1368, Section 3, as amended by Acts 1938, 1909). We will not undertake to set out the allegations of the complaint verbatim, but in our opinion it alleges facts from which arise a conclusive legal presumption that the Authority was properly established and authorized to transact business and exercise its powers, and that the present commissioners were duly and properly appointed. In the first cause of action it is alleged that on April 20, 1938, the City of Spartanburg passed a resolution asserting the need for a Housing Authority in the city. By the terms of Section 3 of the Act as amended (Acts 1938, 1909), it is provided: "In any suit, action or proceeding involving the validity or enforcement of or relating to any contract of the authority, the authority shall be conclusively deemed to have become established and authorized to transact business and exercise its powers hereunder upon proof of the adoption of a resolution by the council declaring the need for the authority."

This is a suit relating to a contract of the Authority It is a suit to enjoin the authority and the city from performing the cooperative agreement partially summarized in Paragraph 11 of the first cause of action. The complaint alleges the adoption of a resolution declaring the need for an Authority to function in Spartanburg. It clearly appears therefore that a conclusive presumption arises under the Act that the Authority has "become established and authorized to transact business and exercise its powers."

The plaintiff in this first cause of action seeks to raise the question of the proper organization of the Housing Authority in Spartanburg and the authority and capacity of the commissioners to perform the duties of their office. It is alleged, in Paragraph 9 that a certificate of appointment of the present members of the Authority was filed December 17, 1939, and reference to it is prayed. Section 3 of the amended Act provides that such certificate shall be conclusive evidence of the due and proper appointment of such commissioners. It follows that the allegations of the complaint affirmatively show the proper organization of the Authority and the proper appointment of its members.

Answering the contention that the city council failed to make an investigation to establish "the number of unsafe and insanitary dwellings in the city," or to ascertain "the shortage of safe and sanitary dwellings," the city council is not required under the Act to make a formal investigation as a prerequisite to the validity of a resolution declaring the need of a Housing Authority. All that the law provides (Section 3 of the Act, as amended) is that the council shall adopt a resolution declaring the need for a Housing Authority if it shall find: "(a) that insanitary or unsafe inhabited dwelling accommodations exist in such city, or (b) that there is a storage of same or sanitary dwelling accommodations in such city available to persons of low income at rentals they can afford."

It may be safely presumed that the mayor and other mem-

bers of the city council are not ignorant of the conditions existing in their city, and that they would know of their own knowledge whether such conditions, or either of them, existed. By the terms of the Act (Section 3) such a resolution is deemed sufficient if it declares that there is such need for an Authority, and finds that either or both of the enumerated conditions exists.

It was held in *Chapman v. Huntington, W. Va., Housing Authority,* W. Va., 3 S. E. (2d), 502, 509: "The declaration of the city council, contained in the resolution and ordinance, as to the conditions actually existing in the city, is entitled to great respect. In fact, it is not subject to attack unless clearly wrong. 11 Am. Jur.; 823, notes 20, 1: Whenever there is reasonable ground for difference of opinion as to the determination of facts by a legislative body, its findings are not subject to judicial review. *Norman v. Baltimore & O. R. Co.,* 294 U. S., 240, 55 S. Ct., 407, 79 L. Ed., 885, 95 A. L. R., 1352; *Radice v. New York,* 264 U. S., 292, 44 S. Ct., 325, 68 L. Ed., 690. It follows that the allegations of a bill of complaint denying the existence of slum areas in the City of Huntington must be clear and explicit. * * * Here, the legislature delegated to the council of the City of Huntington the power to determine the existence or non-existence of substandard conditions. The council acted under that grant of power, presumably on information which enabled it to act intelligently. Having done so, we would not be warranted in substituting our judgment for that of the council, especially on the allegations of a bill which can in no sense be said to contain a direct charge that there are no slum conditions in the City of Huntington."

But aside from this, it appears that all the challenged Acts and proceedings are alleged to have occurred prior to March 21, 1939. On that day Act No. 361 of the Acts of the General Assembly of 1939, 41 St. at Large, page 690, became effective. That Act specifically

provides, Section 1: "The creation and establishment of housing authorities pursuant to the Housing Authorities Law (Act No. 783 of the Acts of 1934, as amended by Act No. 301 and Act No. 345 of the Acts of 1935, and, as amended by Act No. 183 and Act No. 284 of the Acts of 1937, and as amended by Act No. 905 and Act No. 956 of the Acts of 1938) and any amendments thereto, together with all proceedings, acts and things heretofore undertaken, performed or done with reference thereto, are hereby validated, ratified, confirmed, approved and declared legal in all respects, notwithstanding any defect or irregularity therein or any want of statutory authority."

The purpose of this Act was to expressly validate the matters and things challenged in the plaintiff's cause of action.

As to the second cause of action:

The plaintiff attacks the accuracy of certain press releases furnished by the United States Housing Authority and published locally by the Spartanburg Housing Authority. We are unable to perceive how this charge affords a basis for equitable relief. The most that may be inferred from the allegation is that the plaintiff postponed the assertion of his alleged legal rights longer than he would otherwise have done. If he has sustained any damage he has his remedy at law. The truth or falsity of the newspaper stories has no appreciable bearing on his right to an injunction.

He next says that the city does not intend to demolish or abolish existing slums as contemplated by the project. This allegation is a mere conclusion, wholly unsupported by any allegation of fact. The Court must assure that public officers will perform their duty. *Watson v. Jennings,* 146 S. C., 372, 144 S. E., 78. Furthermore, the charge is premature, for, as appears by the allegations of the complaint, the city is given one year after completion of the project within which to demolish existing slums.

The plaintiff also alleges by way of a conclusion that the slum clearance program planned in Spartanburg is not such a project as is contemplated by the applicable Federal and State legislation. No facts are alleged in support of this allegation. It is also asserted that taxpayers will not be able to compete with the Housing Authority in the matter of providing houses. It has been held that govermental competition with owners of private business does not constitute legal damage even though it injures their business. *Alabama Power Co. v. Ickes,* 1938, 302 U. S., 464, 58 S. Ct., 300, 82 L. Ed., 374; *Duke Power Company v. Greenwood County,* 1938, 302 U. S., 485, 58 S. Ct., 306, 82 L. Ed., 381.

It is next contended that the housing program can be accomplished only by diverting tax funds levied for other purposes or by an increase in the assessment. By established rules of pleading this allegation being in the alternative, does not charge the diversion of funds levied for other purposes, but only charges the necessity for increase in the tax assessment. *Daniels v. Berry,* 1929, 148 S. C., 446, 146 S. E., 420.

The expenditure of public funds for slum clearance under the State Housing Law is proper and legal. *McNulty v. Owens,* 188 S. C., 377, 199 S. E., 425.

As to the third cause of action:

Complaint is made that the Housing Authority of Spartanburg selected sites to suit itself and the mayor, contrary to the recommendation of the superintendent of city schools, and that this improper selection of sites will result in the necessity of increasing the size of certain schools and adding to their facilities, hence resulting in an increase in the tax rate.

Section 8 (Acts 1934, page 1368, as amended) vests in the Housing Authority, not in the superintendents of schools, "all powers necessary to carry out and effectuate the purposes and provisions of this Act.

\* \* \*." Those powers must be held to include the power to select the sites which by Subsection 3, Section 8 of the Act, the Authority is given the power to acquire by purchase, lease, eminent domain, or otherwise.

The selection of a site for a large housing project involves many considerations other than concentration of school population in a particular section of the city, albeit that is an important one. Among such considerations is the cost of the land. Naturally unimproved land costs less than improved land; accessibility to places of normal employment must be considered, for all those who live in these houses work usually at manual labor. Likewise proximity to schools, churches, bus lines, parks, etc., is important. In our opinion, it cannot be said that the Housing Authority violated any duty to the plaintiff if it failed to give finality to only one of the many factors entering into the selection of the site.

It was held in. *Brammer v. Housing Authority of Birmingham District,* 239 Ala., 280, 195 So., 256: "The acts involved gave the Housing Board or Authority the power to select the locus *in quo,* and in the absence of a charge that their action was arbitrary, capricious or fraudulent their action will not be disturbed."

To the same effect, see *Sarratt v. Cash,* 103 S. C., 531, 88 S. E., 256, and *Schroeder v. O'Neill,* 179 S. C., 310, 184 S. E., 679.

In our opinion, the complaint in the injunction suit fails to state any cause of action, and the demurrer interposed thereto should be sustained. It follows that the complaint should be dismissed, and it is so ordered.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER, FISHBURNE and STUKES and MR. ACTING ASSOCIATE JUSTICE E. C. DENNIS concur.