# Douthitt et al. v. City of Covington et al.

Nov. 12, 1940.

Johnst Northcutt, Judge.

John E. Shepard and J. Richard Udry for appellants.

Ralph P. Rich and D. Collins Lee for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The plaintiffs, citizens, property owners and taxpayers of Covington, suing for themselves and others similarly situated, seek to enjoin the City, its Board of Commissioners, and the Covington Municipal Housing Commission from entering into or executing certain contracts for slum clearance projects as contemplated by the Federal Housing Act (42 U. S. C. A., Section 1401 et seq.) and Section 2741x-1 et seq., Kentucky Statutes. Dismissal of the petition was suffered when the court sustained a demurrer to it, and an appeal is prosecuted.

' The suit challenges the legality of the proposed venture upon several grounds, some of which have been decided adversely to appellants' contention in an opinion delivered since the judgment herein. Jones v. City of

Paducah, 283 Ky. 628, 142 S. W. (2d) 365. The ordinance and contracts are substantially the same. We confine our consideration to different or additional grounds and arguments. There is much in the pleading of a general nature, and the petition states conclusions as to the absence of need for the project and the motives actuating the defendants. The briefs reflect the opposing views existing throughout the country concerning the practical efficacy of the methods employed and of the wisdom of policy of the government entering upon this new social experiment, which must be admitted by most of us to be noble and charitable in purpose. It has by this time become a national and state policy established by legislation. In Spahn v. Stewart, 268 Ky. 97, 103 S. W. (2d) 651, we held, in accord with the other courts, that the clearing of slum areas is a public purpose within the police power of government and that it is competent for the legislature to provide for their elimination. Of course, the property rights of citizens may be seriously affected by the establishment of a project. They and all others affected, however, have the inalienable privilege of resort to the courts of justice without question or criticism for the protection of their rights, generally and specifically. As we understand, the home of the appellant is one of those buildings which is sought to be demolished by the proceeding. But the courts have no concern with matters of policy except perhaps to say, as we and other courts have said in regard to the scheme, that the right of legislation rests upon the principle of general comfort, health and well-being of the people limited by inhibitions of the constitution and the police power, and, in relation to municipal corporations, by the statutes. Amendments to the statute in 1936 and 1940, enacted subsequent to the opinion of Spahn v. Stewart, supra, do not seem to affect questions raised in this case. Acts, 4th Extraordinary Session of 1936, Chapter 11, page 107; Acts of 1940, Chapter 22, now published as Section 2741x-1 et seq., Supplement to the Statutes. We are concerned only with questions of constitutional limitations and, in a lesser degree, with statutory authority in relation to the execution of the plan or methods employed by the public officers.

It is submitted that the proposed contracts are to be construed as an effort on the part of the city to delegate its power to condemn as nuisances a great number

of homes or houses, and that the city is endeavoring to contract to condemn the buildings without having money or credit with which to pay for the property so taken. It is certain, first, that the ownership of property is subject to the power of the state for the public good to prescribe reasonable, general and uniform regulation and control over its use; and, second, that the exercise of that power must be by a duly constituted legislative body, which cannot surrender or delegate the power to some unauthorized commission or group of individuals. Lowery v. City of Lexington, 116 Ky. 157, 75 S. W. 202, 25 Ky. Law Rep. 392; McCowan v. Gose, 244 Ky. 402, 51 S. W. (2d) 251.

The Kentucky statute enacted in 1934 contemplated the borrowing of money by the respective local housing commissions from agencies of the federal government. At that time it appears that such projects were to be financed under the terms of the National Industrial Recovery Act (40 U. S. C. A., Sections 401(a), 403), which was general in its scope and did not define "slum" or "slum-clearance projects." In 1937 a specific statute was enacted dealing with the subject, called "United States Housing Act of 1937," 42 U. S. C. A., Section 1401 et seq., and the terms are therein defined:

"The term 'slum' means any area where dwellings predominate which, by reason of dilapidation, overcrowding, faulty arrangement or design, lack of ventilation, light or sanitation facilities, or any combination of these factors, are detrimental to safety, health, or morals. * * *

"The term 'slum clearance' means the demolition and removal of buildings from any slum area."

Provision is made in the act for capital grants, loans and annual contributions by the federal government, through the Housing Authority therein created, to public housing agencies subject to certain conditions. One of those conditions is that the project shall include "the elimination by demolition, condemnation, and effective closing, or the compulsory repair or improvement of unsafe or insanitary dwellings situated in the locality or metropolitan area, substantially equal in number to the number of newly constructed dwellings provided by the project; except that such elimination may, in the discretion of the Authority, be deferred in any

locality or metropolitan area where the shortage of decent, safe, or sanitary housing available to families of low income is so acute as to force dangerous overcrowding of such families." 42 U. S. C. A., Sections 1410, 1411.

The riddance of slum dwellings and the acquisition of land for the erection of substituted buildings was left to the states. It had been previously held that the federal government does not have the power of eminent domain for the purposes contemplated. United States v. Certain Lands in the City of Louisville, 6 Cir., 78 F. (2d) 684. The Kentucky statute, Section 2741x-6, confers upon the newly created municipal housing commissions the power of eminent domain to condemn property "necessary * * * for the purpose of constructing any low cost housing project." This is incidental to slum clearance. Chapman v. Huntington Housing Authority, W. Va., 3 S. E. (2d) 502. The act does not undertake to confer the power on the commission to eliminate slum dwellings by condemnation unless the clause quoted and the general authority to acquire property and "to remove insanitary or substandard conditions" should be construed as having that effect—a question not necessary to decide now. In Spahn v. Stewart, supra, it appeared that the property of one of the litigants opposing the project was within the boundary to be cleared and to be built upon. We held it was within the constitutional authority of the legislature to confer the power of eminent domain upon the Louisville Municipal Housing Commission to acquire the property, and within the authority thus conferred for the Commission to exercise it under the particular state of facts. It appears in the case at bar that the new buildings are not to be built on the site of the substandard dwellings to be eliminated, including the home of the appellants, which, however, they maintain is not to be so classed. It is argued that the ordinances and proposed contracts undertake to have the city condemn the property for the use and benefit of the local housing commission, and that the city is undertaking to do so upon the judgment and discretion of that commission and not upon the judgment and discretion of the city authorities.

Ordinance No. 3035 contains a preamble reciting the purposes of the project and the request of the Housing Commission that the city co-operate with it to accom-

plish them; also that "there exist in the city unsafe or insanitary dwelling units to be included in the projects and it is necessary and desirable that the City should eliminate such unsafe or insanitary dwelling units to protect the health, safety and morals of the inhabitants of this City." The ordinance itself commits the city to co-operate with the commission by eliminating such dwellings and enters into a contract with it agreeing to do so in one or the other of the following ways, viz.:

"(a) By demolishing dwelling units which are on land acquired by the City by purchase or otherwise, including demolition of such dwelling units on land purchased for any public uses; or

"(b) By causing the compulsory demolition, effective closing, repair or improvement of such unsafe and insanitary dwelling units; or

"(c) By inducing private owners to voluntarily eliminate such dwelling units."

The description of the dwellings to be thus eliminated is substantially the same as the definition of dwellings characterizing a "slum" in the federal statute above quoted. The contract does not undertake to commit the Housing Commission to exercise any power of eminent domain.

Section 3058-1, Kentucky Statutes, confers upon cities of the second class broad powers in relation to preserving the general health of their inhabitants, including the power "to declare, prevent and abate nuisances on public or private property, and the causes thereof," which under certain conditions may be exercised in a summary manner. Section 3058-26, Kentucky Statutes, extends the right of eminent domain in accordance with the general laws, and Section 3095 prescribes procedure for the condemnation of property for public municipal purposes. The description of the buildings pre-dominating in an area which is characterized as a "slum-area" by the federal statute and the ordinances and contracts in the case at bar is substantially that which has always been the description of a nuisance within the power of a municipality to abate. Polsgrove, Mayor v. Moss, 154 Ky. 408, 157 S. W. 1133; Moll Company v. Holstner, 252 Ky. 249, 67 S. W. (2d) 1, 2; Nourse v. City of Russellville, 257 Ky. 525, 78 S. W. (2d) 761, 764; Cf. Commonwealth v. South Cov. & Cint. St. Ry.

Co., 181 Ky. 459, 205 S. W. 581, 6 A. L. R. 118; United States v. Boynton, D. C., 297 F. 261, 266. The "Municipal Housing Commission Act," Section 2741x-1 et seq., Kentucky Statutes, seems to extend the right of abatement to an area where such nuisances predominate, and to the end that elimination may be properly effected, gives the right to take buildings which standing alone may not be regarded as nuisances, subject always to the due processes of the law, including the right to receive just compensation as secured by Sections 13 and 242 of the Constitution of Kentucky.

Indeed, there is little if any question of the powers of the city itself in this regard, the contention being, as we have stated, that the city officials were undertaking to farm out this power to its creature, the Covington Municipal Housing Commission. We do not construe the ordinances and contracts as surrendering that discretion of the mayor and board of city commissioners. The whole tenor and intent of the ordinances and contracts are that the characterization and elimination of the buildings and areas shall be by joint and co-operative action. If the board of commissioners of the city do not concur in the selections and plans of the housing commission, nothing can be done. We held in Spahn v. Stewart, supra, the statute does not confer legislative power upon the Housing Commission but does give it the power to designate a "slum area." The exercise of such authority will not be interfered with by the courts if there is a reasonable ground for a difference of opinion as to the classification or characterization. Chapman v. Huntington Housing Authority, W. Va., 3 S. E. (2d) 502; Housing Authority of County of Los Angeles v. Dockweiler, 14 Cal. (2d) 437, 94 P. (2d) 794; Louisville & N. R. Co. v. City of Louisville, 190 Ky. 214, 227 S. W. 160; Baxter v. City of Louisville, 224 Ky. 604, 6 S. W. (2d) 1074. And as was held in McNulty v. Owens, Mayor, 188 S. C. 377, 199 S. E. 425, where a similar contract was involved, the power is to be exercised by the city in co-operation with the program of the Housing Commission, subject to all of the limitations to which such actions are subjected under the constitution and laws of the state. There are other cases so holding. In short, the Housing Commission develops the plan and designates the property to be cleared and if the city authorities concur the city condemns it.

Concerning the contention that the city's financial condition is such that it cannot legally pay for the property to be condemned or acquired, we think it is sufficient to say that not only the statute but the ordinances and contracts indicate that the funds shall be furnished by the Housing Commission from proceeds of bonds and federal subsidies, and that they do not create a financial obligation or debt against the city. Section 2741x-10, Kentucky Statutes; Hogg v. City of Rome, 189 Ga. 298, 6 S. E. (2d) 48; Rutherford v. City of Great Falls, 107 Mont. 512, 86 P. (2d) 656. But if it be otherwise in the operation of the scheme, under the constitution as above cited the property of no individual can be taken until somebody pays for it; and any contractual commitment by the city is subject always to all constitutional and statutory inhibitions and limitations to be applied in any particular instance in the course of the execution of the commitment. McNulty v. Owens, supra; Rutherford v. City of Great Falls, supra.

The statutory authority both as to what may be done and how it may be done being as above outlined— the property holder having protection against unauthorized or arbitrary action and security of compensation— we do not think it can be said there is any violation of the due process provisions of the federal and state constitutions. Constitution of the United States, 14th Amendment; Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 A. 834.

The ordinances and contracts are not materially different from those approved in our Louisville and Paducah cases, and in the opinions of other courts of last resort. The plan and its operation are consistent with the statute.

The judgment is affirmed.