# Webster v. City of Frankfort Housing Commission.

Jan. 19, 1943.

Hubert Meredith, Attorney General, and Jesse K. Lewis, Assistant Attorney General for appellant.

D. Collins Lee for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Pursuant to Chapter 80, KRS, in accord with sec. 1401 et seq., Title 42 U. S. C. A., Frankfort by appropriate ordinance accepted the provisions of the Acts. Steps were taken, including a survey resulting in demolition of 75 dwellings in a portion of the city well characterized as a "slum area," and in 1938 acquisition of

land in a more desirable spot with erection of more suitable houses, later occupied by families of a low income group.

Appellant, conceiving it to be his legal duty, let it be known that he was proposing to list the real property, used as above stated for ad valorem taxes. The Commission, of the opinion that the project constituted public property, used for a public purpose, sought to enjoin appellant from furthering his purpose, relying on the pronouncement of this court in Spahn v. Stewart, 268 Ky. 97, 103 S. W. (2d) 651, and certain sections of the Constitution relating to exemptions from taxation. A demurrer to the petition was overruled; appellant filed answer and counterclaim, the court sustaining the demurrer of appellee. Appellant did not plead further, and the court dismissed the counterclaim, and granted injunction. In a written opinion declaring the rights of parties, the chancellor declined to uphold any one of appellant's contentions, or the one raised by his counterclaim, that the court should advise appellant to list for tax purposes the bonds issued by the Commission.

Under the contract between the Federal Housing Authority and Commission, as is authorized by statutes and ordinance, Authority was to and did advance to Commission 90 per cent of total cost of establishment, $347,000, for which sum Commission issued bonds, Authority taking over same to the extent of its loan, the remainder passing into the hands of purchasers. The pleadings show that a proposed assessment would be on a basis of about $208,000 value; the prevailing rates of taxation for state, county and district purposes, upon the per $100 of valuation, would increase monthly rentals ($12.19 per unit) to $13.24, and if the property be subjected there would as a consequence follow application of the city rate of $2.25, increasing average rental to $15.49 per month, to say nothing of the result if taxing authorities should undertake to assess the project as omitted property.

Under the contract it was agreed that Authority would make annual contribution to Commission for maintenance, to the amount of approximately $11,000 upon condition that Commission would annually contribute 20 per cent of such amount, and that exemption from taxation would constitute such contribution. Up to this time the agreement has been observed. A failure of the con-

tribution by Commission, as is provided, would work a forfeiture of right to Authority's contribution, resulting in an increase of average monthly rentals to more than $25.

Appellant's counsel concedes that the Spahn opinion, in so far as it upholds the power exercised by the Commission in condemning unsafe and unsanitary dwellings is fundamentally sound, but it is insisted that this court has never held that the bonds or the project property are exempt from taxation, or that if so held inferentially it is the only court which has so held. It was alleged that certain sections of the Constitution are being violated, which in the Spahn case were not brought to our attention or given consideration; these noted as sections 3, 60, 157, 158, 170, 171, 175 and 179, adding alleged violation of the 14th amendment to the Federal Constitution, based on the ground that owners of like properties, rented to persons of low income, are required to pay taxes.

The Spahn case has been referred to and the conclusions therein generally upheld by three other cases in our jurisdiction, and the combination of the four should be, and to our mind are conclusive of every question here raised, including that in respect of section 3 of the Bill of Rights. We refer to Jones v. City of Paducah, 283 Ky. 628, 142 S. W. (2d) 365; Douthitt v. City of Covington, 284 Ky. 382, 144 S. W. (2d) 1025, and City of Louisville v. German, 286 Ky. 477, 150 S. W. (2d) 931, 935, in which we concluded that the Louisville Housing project was "a work of purely public nature and a governmental function."

The belief that pronouncements in the named cases are conclusive is amply fortified when we note that more than forty opinions rendered by courts of more than twenty-five other jurisdictions, many following our Spahn case, have had the subjects before them, and in several, considered in addition to other constitutional objections, the question of exemption of bonds and physical properties, in which with a lone exception, such exemptions have been held valid. Some in the face of constitutional provisions (in respect of exemption) similar to ours, and in some more stringent.

The question here vigorously argued turns on construction and application of sections 170 of the Constitution which exempts from taxation "public property

used for public purposes,'' and 171 exempting bonds of the state, counties, municipalities and certain taxing districts. If it be, as we are of opinion it has been, concluded that under these sections the property and bonds are exempt, then there is little need for consideration of the contention that there is here a ''grant of exclusive, separate public emoluments, or privileges.''

The question of bond exemption was presented and determined in our Spahn and other opinions, supported by ample authority for holding them exempt in Klein v. City of Louisville, 224 Ky. 624, 6 S. W. (2d) 1104, Bloxton v. State Highway Comm., 225 Ky. 324, 8 S. W. (2d) 392, and Hughes v. State Board of Health, 260 Ky. 228, 84 S. W. (2d) 52. This contention, as well as that with relation to Section 170 of the Constitution, is based on the broad assertion that the project property is not owned by the public, or used for public purposes, fully answered by the Spahn and other cases dealing with the subject, from this court, among which are Bellamy v. Board of Education, 255 Ky. 447, 74 S. W. (2d) 920; Board of Park Commissioners v. Speed, 215 Ky. 319, 285 S. W. 212; the Hughes case, supra, to which may be confidently added numerous cases from other jurisdictions later noted.

While in pleading appellant asserts violations of sections of the Constitution above noted, some are not presented in brief, or if so, rather incidentally, but due to the wide reaching effect of our decision on this important question, we shall briefly review. That the Commission is a public body carrying out ''a work of purely public nature and a governmental function'' (German case) is made manifest in cases cited above, and cases from other jurisdictions, which are entitled to weight. The contention that there is a violation of secs. 157 and 158 of the Constitution, or either, also appears to have been answered in our own cited cases dealing with the subject, and McDonald v. University of Kentucky, 225 Ky. 205, 7 S. W. (2d) 1046, Van Hooser & Co. v. University of Kentucky, 262 Ky. 581, 90 S. W. (2d) 1029, which together with Klein v. City of Louisville and Hughes v. State Board of Health, supra, hold that the credit of the municipality is not disturbed, since the bonds do not constitute a debt against the taxpayers of the municipality. The objection to lending of credit is well answered in Lambert, Mayor v. Board of Trustees,

151 Ky. 725, 152 S. W. 802, Ann. Cas. 1915A, 180; Board of Trustees v. City of Lexington, 112 Ky. 171, 65 S. W. 350, and the later noted cases from the courts of Arizona, Arkansas, California, Louisiana, and others. The question of unauthorized delegation of power is concluded by the opinion in the Spahn case, and numerous others reported from sister states.

If perchance we have not given particular attention to or extended our remarks upon some of the questions raised and argued, it is because we are thoroughly satisfied that each and all have been well considered and passed upon by this and courts of other jurisdictions. It would require too much space and time to take up all these opinions separately and digest them. This has been well done by the annotator, following the case of Housing Authority v. Higginbotham, 135 Tex. 158, 143 S. W. (2d) 79, reported in 130 A. L. R. p. 1053, the notes discussing the foreign cases (and our own) on all points raised.

While cases from more than twenty courts of other states are discussed, in all there are more than thirty opinions noted, to which we may add, after a cursory examination, Mumpower v. Housing Authority of Bristol, 176 Va. 426, 11 S. E. (2d) 732, which deals with the question of exemption of bonds and properties under a constitutional provision more restrictive than ours; Woodworth v. Gallman, 195 S. C. 157, 10 S. E. (2d) 316; Cox v. City of Kinston, 217 N. C. 391, 8 S. E. (2d) 252; Lloyd v. Twin Falls H. A., Idaho, 113 P. (2d) 1102; State ex rel. v. McDavid, 145 Fla. 605, 200 So. 100, 133 A. L. R. 360; Benjamin v. Housing Authority of Darlington County, 198 S. C. 79, 15 S. E. (2d) 737.

We have examined many of these opinions and read a sufficient number of them to justify us in agreeing with the annotator's summation (130 A. L. R. 1076), in which he concluded that in view of all cited cases it might well be denoted that the legal concept of the courts of last resort of the various states, in upholding slum clearance statutes and ordinances, has established their constitutionality. There are quoted extracts from an article by Hon. Claybourne H. George in 7 Geo. Washington Law Review, 1938/9:

"That is, that slum clearance and the construction of low rent housing projects are public purposes,

in which the local housing authority could legally act, and for which purposes the power of eminent domain could be exercised. That there is no delegation of legislative power, where the legislature confers only authority as to the execution of the law, to be exercised under and in pursuance of the law. That, as the property of the authority is for public use, such will be free from taxation. Also, that the obligation created under the local housing authorities, as to bonds and contractual obligation costs, are not debts of the state or of its other political subdivisions, which are usually curtailed by State Constitutions. In addition to these major legal concepts there were others decided which were not applicable to all cases. The housing authority legislation was not class legislation to the exclusion of other citizens, as it was not by arbitrary standards. * * * Housing units may legally compete with the rentals of private property. The agreement of the city to eliminate unsafe and unsanitary dwellings will not be construed to bind the city to do acts, financial or otherwise, contrary to what it should do under the public power."

Counsel for appellant has directed our attention to only one case which holds that so much of an act (and ordinance) providing for low cost housing, similar to those shown here (and in cited cases) which provided exemption from ad valorem taxes, was unconstitutional. In Columbus Met. Housing Authority v. Thatcher, 140 Ohio St. 38, 42 N. E. (2d) 437, after the court had held the housing act generally constitutional, later concluded that the question of exemption had not been presented, and by a divided court determined that the exemption contravened a section of the Ohio Constitution which authorized exemption to "public property used exclusively for any public purpose." Article 12, sec. 2.

We shall not attempt a discussion of the effect of the word "exclusively." It does not appear in our Constitution, but in view of decisions of courts of other states, a number of which employ the word in their Constitutions, we modestly express the opinion that the court adopted a rather narrow interpretation, which may have been due, in part, to the manner in which the question, by a limiting stipulation, was presented to the initial taxing body and finally to the court.

It is clear from a reading of the opinion that the court did not base its conclusions upon consideration of what, in all cases cited, appears to be and to have been the dominant question, the exercise of governmental powers in ridding communities of unsafe, unsanitary and crime festering habitations and supplying low rent quarters, not solely to the benefit of those who may be better housed, but to the great benefit of the general public. United States v. Brooks, D. C. Cal., 28 F. Supp. 712.

Appellant does not place himself in class or position to forward the contention that the act, ordinance or contract is violative of the equal protection clause of the 14th amendment to the Federal Constitution in exempting the project bonds and property from taxation. Since the question is raised in pleading, though mentioned in brief only as a conclusion, we may say that we are of the opinion that the contention is not well founded, as may be evidenced by reference to Carmichael v. Southern Coal Co., 301 U. S. 495, 57 S. Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327; Nashville, C. & St. L. R. Co. v. Browning, 310 U. S. 362, 60 S. Ct. 968, 84 L. Ed. 1254; Beers v. Glynn, 211 U. S. 477, 29 S. Ct. 186, 53 L. Ed. 290.

On the whole case we are of the opinion that the chancellor correctly declared the rights of parties, granted the injunction and dismissed the counterclaim. Judgment affirmed.

Whole Court sitting.

Judge Tilford dissenting.

Conceiving that my oath of office obligates me to construe the Constitution according to what I believe to be its plain intendment, I have no alternative but to dissent from the conclusions voiced by the majority of the court that the Municipal Housing Project involved in this litigation is exempt from taxation.

Slum clearance is undoubtedly desirable, and well within the purview of permissible legislation; but, that result accomplished, the permissible public purpose is fulfilled. The visible effect of exempting housing projects from taxation is to enable a selected low income but unincapacitated group of tenants to pay less rent than they would otherwise be compelled to pay for such accommodations. That they might establish other slums if their rent was not so reduced is no more pertinent to

the question under discussion than a consideration of the possible results of all the other evils incident to small incomes would be persuasive that those who have the means to do so, should be required to furnish better clothes and food to the lower income groups. If such a system of government is desirable, and I do not gainsay it, then our Constitution should be amended so as to permit it. In my opinion, sections 3, 170 and 175 constitute insurmountable bars.